**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

**Norfolk Southern Railway Company**
650 W. Peachtree Street NW
Atlanta, Georgia 30308

Plaintiff,

**v.**

**ITS Technologies & Logistics, LLC**
999 Oakmont Plaza Dr, Suite 340
Westmont, IL 60559

Defendant.

**CASE NO**:

## COMPLAINT

Norfolk Southern Railway Company ("Norfolk Southern") files this Complaint against ITS Technologies & Logistics, LLC ("ITS") and avers as follows:

## PARTIES

1. Norfolk Southern is a corporation incorporated under the laws of the Commonwealth of Virginia with its principal place of business located in Atlanta, Georgia.

2. Norfolk Southern operates as an interstate rail carrier subject to the jurisdiction of the U.S. Surface Transportation Board, and is governed by the provisions of the Interstate Commerce Act, 49 U.S.C. § 10101, et seq.

3. ITS is a limited liability company organized under the laws of the State of Illinois with its principal place of business in Westmont, Illinois.

4. Upon information and belief and after reasonable investigation, none of the members of ITS are citizens of Virginia or Georgia.

## JURISDICTION AND VENUE

5. This Court has jurisdiction based upon 28 U.S.C. § 1332 as plaintiff, Norfolk Southern, and defendant, ITS, are citizens of different states, and the amount at issue exceeds jurisdictional requirements.

6. This Court has personal jurisdiction over the ITS pursuant to a valid and enforceable forum-selection clause contained in the parties' agreement. In that agreement, ITS expressly consented to personal jurisdiction in the United States District Court for the Eastern District of Virginia. The forum-selection clause provides that the parties submit to the jurisdiction of this Court for the resolution of any dispute that arises out of the agreement or the transaction contemplated by the agreement. Accordingly, personal jurisdiction is proper in this Court.

7. Venue properly lies in this Court because ITS has consented to this venue through a mandatory forum-selection clause and, alternatively, pursuant to 28 U.S.C. § 1391(b) a substantial part of the events or omissions occurred within this judicial district.

## FACTUAL PREDICATE

8. Norfolk Southern owns and operates an Intermodal Facility located at 6098 Soutel Drive, Jacksonville, Florida 32219 ("Facility").

9. The Facility serves as a critical hub for the transfer, handling, and movement of domestic and international intermodal shipping containers.

10. At the Facility, intermodal shipping containers are interchanged to and from Norfolk Southern's rail network, which extends to major commercial markets across the southeastern and midwestern United States.

11. The Facility includes infrastructure and equipment designed to support high-volume operations, including container lifts, chassis storage, and truck ingress and egress systems, and it is integral to Norfolk Southern's commercial freight activities.

12. ITS is an intermodal services provider that performs contractor services at intermodal terminals and facilities like the Facility.

**Intermodal Operations Agreement**

13. On January 1, 2020, Norfolk Southern and ITS entered into an Intermodal Operations Agreement (the "Operations Agreement").

14. The Operations Agreement required ITS to provide intermodal transportation services at the Facility, including, but not limited to, lifting and moving intermodal containers, loading intermodal containers onto railcars, and unloading intermodal containers from railcars (the "Intermodal Transportation Services").

15. Pursuant to the Operations Agreement, ITS agreed that it would indemnify and hold harmless Norfolk Southern from and against any and all liability, damages, claims, suits, judgments, costs, expenses (including litigation costs, investigation costs, reasonable attorney fees, environmental clean-up costs, etc.), fines, penalties and losses arising from or in connection with the loss of or damage to any property arising from, incident to or in connection with the negligent acts or omissions or willful misconduct of ITS.

16. Norfolk Southern agreed to compensate ITS in exchange for ITS performing the Intermodal Transportation Services.

**Lift Machine Maintenance Agreement**

17. Also on January 1, 2020, Norfolk Southern and ITS entered into a Lift Machine Maintenance Agreement (the "Maintenance Agreement").

18. The Maintenance Agreement required, among other obligations, that ITS perform all maintenance necessary to maintain certain Norfolk Southern's equipment (the "Maintenance Services") at the Facility, which included, but was not limited to, the following equipment (the "Equipment"):

| Make | Serial Number | ID Number |
|---|---|---|
| Mi-Jack 1000RC Overhead | 783R | 11-783R |
| Mi-Jack 1000RC Overhead | 784R | 11-784R |
| Mi-Jack 1000R Overhead | 984R | 11-984R |
| Mi-Jack 1000R Overhead | 785R | 11-985R |
| Mi-Jack 1200R Overhead | 1632 | 11-1632 |
| Taylor TX330S Forklift | 35552 | 41-5552 |
| Taylor TX300M Forklift | 35884 | 41-5884 |
| Greenfield Chassis Picker | A07888HCP-16 | 51-CP16 |
| Greenfield Chassis Rotator | A170060HCR-1 | 51-0060 |

19. Pursuant to the Maintenance Agreement, ITS agreed that it would indemnify and hold harmless Norfolk Southern from and against any and all liability, damages, claims, suits, judgments, costs, expenses (including litigation costs, investigation costs, reasonable attorney fees, environmental clean-up costs, etc.), fines, penalties and losses arising from or in connection with the loss of or damage to any property arising from, incident to or in connection with the Maintenance Agreement or from ITS's performance of the Maintenance Agreement.

20. Norfolk Southern agreed to compensate ITS in exchange for ITS performing the Maintenance Services.

**November 19, 2021 Fire**

21. ITS utilized the Equipment to perform the Intermodal Transportation Services at the Facility.

22. On November 19, 2021, personnel, employees, contractors, or agents of ITS were operating Mi-Jack 1000RC Overhead Crane No. 11-783R (the "783R Crane") while performing Intermodal Transportation Services at the Facility.

23. ITS was also responsible for performing Maintenance Services on the 783R Crane.

24. During operations on November 19, 2021, the 783R Crane caught fire, resulting in significant damage to the 783R Crane (the "November 2021 Fire").

25. Norfolk Southern's investigation determined that the November 2021 Fire originated because ITS failed to perform adequate Maintenance Services and/or operated the 783R Crane in an unsafe condition.

26. ITS's failure to properly maintain and safely operate the 783R Crane directly resulted in the November 2021 Fire and the resulting damage.

27. The 783R Crane was rendered out-of-service while being repaired for the damage caused to the crane by the November 2021 Fire.

28. The 783R Crane was repaired so that it could be returned to service at the Facility.

29. The 783R Crane was returned to service on or about June 3, 2022.

**March 21, 2022 Fire**

30. On March 21, 2022, personnel, employees, contractors, or agents of ITS were operating Mi-Jack 1000RC Overhead Crane No. 11-784R (the "784R Crane") while performing Intermodal Transportation Services at the Facility.

31. ITS was also responsible for performing Maintenance Services on the 784R Crane.

32. During operations on March 21, 2022, the 784R Crane caught fire, resulting in significant damage to the 784R Crane (the "March 2022 Fire").

33. The March 2022 Fire occurred ITS was operating the 784R Crane underneath the overpass for Edgewood Avenue/State Road 111 (the "Bridge") causing damage to the Bridge.

34. Upon information and belief, the State of Florida owns the Bridge.

35. Norfolk Southern's investigation determined that the March 2022 Fire originated because ITS failed to perform adequate Maintenance Services and/or operated the 784R Crane in an unsafe condition.

36. ITS's failure to properly maintain and safely operate the 784R Crane directly resulted in the March 2022 Fire and the resulting damage.

37. The 784R Crane was rendered out-of-service while being repaired for the damage caused to the crane by the March 2022 Fire.

38. The 783R Crane was repaired so that it could be returned to service at the Facility.

39. The 783R Crane was returned to service on or about September 3, 2022.

**Economic Losses**

40. The 783R Crane and 784R Crane perform a crucial role in lifting, moving, and positioning intermodal containers at the Facility.

41. Because of the November 2021 Fire and the March 2022 Fire, Norfolk Southern lost the use of the 783R Crane and the 784R Crane while each was being repaired.

42. The loss of use of the 783R Crane and the 784R Crane, jointly and respectively, caused a decrease in the number of intermodal containers that Norfolk Southern could lift, move, or position at the Facility while the cranes were out of service.

43. Norfolk Southern was without the use of one crane (the 783R Crane) at the Facility from November 19, 2021 to March 21, 2022.

44. Norfolk Southern was without the use of two cranes (the 783R Crane and 784R Crane) at the Facility from March 22, 2022 to June 2, 2022.

45. Norfolk Southern was without the use of one crane (the 784R Crane) at the Facility from June 3, 2022 to September 2, 2022.

46. During the period when the 783R Crane and 784R Crane were being repaired, Norfolk Southern lost profits from intermodal rail shipments that these cranes would have generated by performing lifts, movements, and positioning of intermodal containers.

47. But for the November 2021 Fire and March 2022 Fire, which resulted in damage and loss of use of the 783R Crane and 784R Crane respectively, Norfolk Southern would have been able to perform a greater volume of container lifts, movements, and positioning during the affected outage periods.

48. The inability to perform the intermodal container lifts, movements, and positioning that the 783R Crane and 784R Crane would have performed resulting in a decrease in rail shipping volume that Norfolk Southern would otherwise have realized at the Facility during the affected outage periods.

49. As a direct and proximate result of the November 2021 Fire and March 2022 Fire, Norfolk Southern's intermodal operations were disrupted, causing a reduction in container handling activity and resulting in lost profits.

**COUNT I – BREACH OF CONTRACT**
**(Economic Losses)**

50. Norfolk Southern incorporates all preceding paragraphs as if full set forth herein.

51. The Operations Agreement and Maintenance Agreement were valid and enforceable contracts between Norfolk Southern and ITS.

52. Pursuant to the Operations Agreement, ITS agreed to perform Intermodal Transportation Services in exchange for Norfolk Southern providing compensation.

53. Pursuant to the Maintenance Agreement, ITS agreed to perform Maintenance Services in exchange for Norfolk Southern providing compensation.

54. Norfolk Southern provided compensation to ITS for performing Intermodal Transportation Services and Maintenance Services.

55. Norfolk Southern performed all of its obligations under the Operations Agreement and Maintenance Agreement.

56. ITS failed to perform its contractual obligations under the Operations Agreement and Maintenance Agreement.

57. Without limitation, ITS breached the Operations Agreement by:

a. Failing to inspect the 783R Crane and 784R Crane prior to operation and operating each crane with deficiencies that would impair their proper operation;

b. Failing to discontinue use of the 783R Crane and 784R Crane after observing defects with crane, which impaired their proper operation, including, but not limited to, operating the cranes after observing or otherwise being aware that spreading arms of the cranes may be striking the fuel tanks on the cranes;

c. Failing to maintain accurate reports documenting observed defects to the 783R Crane and 784R Crane and providing the reports to Norfolk Southern;

d. Failing to notify Norfolk Southern of any damage to property; and/or

e. Failing to comply with federal, state, and local laws and rules regarding controlling waste and pollution relating to the release or disposal or hazardous materials.

58. Without limitation, ITS breached the Maintenance Agreement by:

a. Failing to perform all maintenance necessary to maintain the 783R Crane and 784R Crane in proper operating condition;

b. Failing to supply Norfolk Southern with reports regarding daily maintenance and repairs, the quantity of each fluid added to the 783R Crane and 784R Crane, and a monthly report regarding the 783R Crane and 784R Crane;

c. Failing to keep the 783R Crane and 784R Crane clean and free of external substance which constitutes a hazard to the safety of any person around the 783R Crane and 784R Crane;

d. Failing to notify Norfolk Southern of any substance release, the amount released, and the measures undertaken to clean up and remove the released material regarding the 783R Crane and 784R Crane;

e. Failing to properly dispose of hazardous waste from the 783R Crane and 784R Crane; and/or

f. Failing to comply with federal, state, and local laws and rules regarding controlling waste and pollution relating to the release or disposal or hazardous materials.

59. ITS's breaches of the Operations Agreement and/or Maintenance Agreement were material breaches of the agreements.

60. ITS's breaches of the Operations Agreement and/or Maintenance Agreement caused the November 2021 Fire and the damage to the 783R Crane that resulted in Norfolk Southern's loss of the use of the 783R Crane from November 19, 2021, to June 2, 2022.

61. ITS's breaches of the Operations Agreement and/or Maintenance Agreement caused the March 2022 Fire and the damage to the 784R Crane that resulted in Norfolk Southern's loss of the use of the 783R Crane from March 21, 2022, to September 2, 2022.

62. As a direct and proximate result of ITS's breaches of the Operations Agreement and/or Maintenance Agreement, Norfolk Southern suffered economic losses in an amount not less than $11,331,611.00.

63. Norfolk Southern demanded its lost profits arising from the loss of use of the 783R Crane and 784R Crane from ITS, but ITS has failed or otherwise refused to pay the economic losses sustained by Norfolk Southern because of the fires.

**WHEREFORE**, Norfolk Southern Railway Company respectfully requests that the Court enter judgment in its favor and against ITS Technologies and Logistics LLC in an amount not less than $11,331,611.00, plus prejudgment interest, and costs, together with any such other relief as the Court deems just and proper.

Respectfully submitted,

**HUDGINS LAW FIRM, P.C.**

By: /s/ David D. Hudgins
David D. Hudgins
VSB No. 20602
2331 Mill Road, Suite 100
Alexandria, Virginia 22314
Telephone: 703-739-3300
Facsimile: 703-739-3700
dhudgins@hudginslawfirm.com

**COHEN & FREY P.C.**

Jeffrey D. Cohen (*pro hac vice* to be filed)
Timothy L. Frey (*pro hac vice* to be filed)
The Times Building
32 Parking Plaza, Suite 402
Ardmore, PA 19003
Telephone: 215-609-1110

Facsimile: 215-609-1117
jcohen@freightlaw.net
tfrey@freightlaw.net

Date: October 30, 2026

*Attorneys for Plaintiff,*
*Norfolk Southern Railway Company*